IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

```
ARLISA R. WALTON,              }
                               }
     Plaintiff                 }
                               }    CIVIL ACTION NO.
vs.                            }
                               }    CV-96-2945-2
AMI BROOKWOOD MEDICAL CENTER,  }
TENENT HEALTHCARE              }
CORPORATION,                   }
                               }
     Defendants                }
```

FILED
MAR 25 1998
U.S. DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

ENTERED
MAR 26 1998

MEMORANDUM OPINION

Present before the court is a motion for summary judgment filed by the defendants, AMI Brookwood Medical Center and Tenent Healthcare Corporation,[1] in this employment discrimination case brought by plaintiff Arlisa R. Walton ("Walton"). Walton, a black female who suffers from scoliosis, alleges that Brookwood discriminated against her on the basis of disability, 42 U.S.C. § 12101, *et seq.*, race and sex. 42 U.S.C. 2000e, *et seq.*, and that Brookwood retaliated against her after she filed a complaint with the Equal Employment Opportunity Commission. Because no genuine issues of material fact exist in this case, summary judgment for the defendants is appropriate.

I. FACTS

Brookwood hired Walton as a central distribution linen

---

[1] The court will refer to defendants collectively as "Brookwood."

technician on April 10, 1995. Walton Dep., at 46. In this position, Walton monitored and restocked supplies, washed linens, and delivered linens. Walton Dep., at 47; Pl.'s Ex. 2, at 19. On July 31, 1995, Brookwood disciplined her in the form of counseling after a supervisor observed her sitting in a waiting room where she appeared to be watching television. Walton Dep., 67. Walton claims that she was taking a moment to rest in the waiting room because her back hurt, but she was not watching the television. Walton Dep., at 67 - 68. In August 1995 Brookwood disciplined Walton again. It suspended her for three days for insubordination. Walton Dep., at 78. Walton does not remember the details surrounding this suspension, but she testified that she performed her duties properly without ever giving her supervisors "any back talk." Walton Dep., at 81.

Sometime after she began working at Brookwood, Walton began to experience back pain when pushing the linen cart. Walton Dep., at 50 - 51. She informed Brookwood that she suffered from scoliosis and it arranged for a physical examination. Walton Dep., at 50, 52. During that examination, Walton indicated that she only experienced back problems when she pushed "the big green linen carts." Walton Dep., at 53. In response to Walton's back problems, Brookwood no longer required that she push the large 600 pound linen carts. Walton Dep., at 56. Instead, Brookwood

2

allowed Walton to use a smaller cart, which weighed up to 300 pounds. *Id*; Pl.s' Ex. 9. Even with the lighter cart, Walton's back continued to give her "a little trouble." Walton Dep., at 56. Once when she complained to her supervisor about her back, he excused her from the rest of her shift and allowed her to go home. Walton Dep., at 57. Eventually, Brookwood allowed Walton to stock the cart with fewer linens. Walton Dep., at 58. With fewer linens on the lighter cart, Walton's "scoliosis didn't act up." Walton Dep., at 58 - 59. However, placing fewer linens on the cart slowed Walton down and one of her supervisors complained that she was working too slowly. Walton Dep., at 58 - 60. However, Walton does not recall any supervisor disciplining her for performing her linen deliver duties too slowly. Walton Dep., at 60.

In December 1995, Brookwood began using Omnicell, a computerized system that monitors supply use and generates lists indicating which supplies need to be restocked and/or ordered. Walton Dep., at 46 - 47. Around that same time, Brookwood provided Walton with individualized training on the use of the Omnicell system. Walton Dep., at 47. Brookwood again trained Walton on February 18, 1996. Pl.'s Ex. 5, at 38. Shortly thereafter, Brookwood suspended her for three days after she allegedly failed to perform certain tasks in connection with her

3

supply monitoring duties. Walton Dep., at 85 - 86. Walton claims she did nothing improper, but she admits that Brookwood informed her that it would terminate her if she failed to properly follow the Omnicell restock procedures again. Walton Dep., at 86, 94. On March 5, 1996, Brookwood trained Walton once more. Walton Dep., at 89 - 90. It discharged her on March 11, for creating duplicate restock lists in violation of Omnicell procedures. Defs.' Ex. 4. (Doc 29) ¶6 - 7. If not discovered and corrected, duplicate lists cause incorrect inventory records and double billing by the supply vendor. *Id.*

## II.  RACE DISCRIMINATION CLAIM

Brookwood contends that Walton is unable to make out a prima facie case for race discrimination because, *inter alia*, she cannot show that Brookwood replaced her with someone outside of her protected group. Although Walton's replacement is a black female, this fact alone does not destroy Walton's prima facie case. *See Nix v. WLCY Radio*, 738 F.2d 1181, 1185 (11th Cir. 1984) ("Title VII does not 'give an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees' group.'").

However, this court need not determine whether Walton makes

4

out a prima facie case because she has abandoned her race claim. Walton's brief completely fails to address the race claim. In addition, she does not describe any circumstances that would even remotely suggest discriminatory animus based upon race. Accordingly, Walton has waived her race discrimination claim, and summary judgment for defendants is appropriate on said claim. *See Resolution Trust Corp. v. Dunmar*, 43 F.3d 587, 599 (11th Cir.)("In opposing a motion for summary judgment, 'a party may not rely on his pleadings to avoid judgment against him.'... grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.")(citations omitted), *cert. denied, Jones v. Resolution Trust Corp.*, 516 U.S. 817, 116 S. Ct. 74 (1995).

### III. SEX DISCRIMINATION CLAIM

Brookwood attacks Walton's sex discrimination claim in the same manner it attacks her race claim, by arguing that Walton is unable to make out a prima facie case. Specifically, Brookwood contends that Walton was not qualified for the position and she was replaced by someone in her protected class.

Walton never explicitly addresses these arguments. Instead she makes several statements, in the midst of her disability claim argument, regarding Brookwood's alleged favorable treatment of men. Pl.'s Br. at 10, 14. Specifically, she claims that Brookwood made

5

exceptions to certain policies for the benefit of a male employee, but refused to do so for Walton. In October Walton requested a job transfer to another department. Walton Dep., at 103. However, Brookwood informed her that, consistent with its personnel policy, it would not consider her transfer request because she had been disciplined within the six months prior to the request. Walton Dep., at 103 - 4. Walton points out that Patsy Burrell ("Burrell"), Brookwood Director of Human Resources, testified that the hospital makes exceptions to the "six month rule," if necessary, due to its personnel needs. Pl.'s Ex. 2, at 30 - 33. However, Burrell further testified that she was unaware of Walton's department, the central linen supply unit, ever granting any exceptions. *Id.*

Walton, however contends that Burrell's testimony is untruthful. Walton attempts to produce evidence of disparate treatment by pointing out that Walton's department made an exception to its personnel policies for the benefit of William Underwood ("Underwood"). Underwood worked in the central linen supply unit for over a year before his termination in September 1995. Pl.'s Ex. 7. His termination notice indicates that he was not eligible for rehire. *Id.* However, Brookwood rehired him less than three months later. *Id.* By rehiring Underwood, despite previously categorizing him as "not eligible for rehire," Walton

6

argues that Brookwood discriminatorily made an exception to its personnel policies for a male employee, but refused to make any exceptions on Walton's behalf. "He was a male who got differential treatment...Apparently, the defendants made exceptions when the mood struck them. They just weren't in the mood for Ms. Walton." Pl.'s Br. at 10.

This argument is preposterous, for two reasons. First, the "six month rule" for which Brookwood makes exceptions is not the same "six month rule" that made Walton ineligible for a job transfer. Burrell testified that Brookwood generally does not consider job transfer requests until an employee has been employed for six months. However, Brookwood will consider making an exception to this six month <u>employment</u> policy, if the personnel needs of hospital so require. In contrast, Brookwood denied Walton's transfer request because of the six month <u>discipline</u> policy. Walton has presented no evidence regarding exceptions to the six month discipline policy.

Moreover, Brookwood's willingness to rehire Underwood does not indicate disparate treatment of <u>similarly situated</u> employees. Brookwood's decision to rehire Underwood is not comparable to its decision to deny Walton's transfer. Walton attempts to compare apples with oranges. Underwood's rehire situation is not at all

7

similar to Walton's transfer situation. Therefore, Underwood is not an appropriate comparator for purposes of the employment discrimination statute.

In a last ditch effort, Walton unsuccessfully points to additional evidence in an attempt to show disparate treatment based upon sex. Brookwood was forced to re-train Fred Cook ("Cook"), a male central linen supply employee, on the Omnicell system, but it never became necessary to terminate him after retraining. Pl.'s Ex. 5, at 64 - 65. "Mr. Cook did not get fired after he had to be retrained. Walton did. Another example of a male getting preferential treatment over a female," argues Walton. Pl.'s Br. at 14.

Unlike the comparison with Underwood, the Cook comparison does attempt to equate apples with apples; however, there is no evidence that these two apples were similarly situated. There is no evidence that Brookwood retrained Cook on three separate occasions, as it did Walton. There is no evidence that Cook generated multiple supply lists, as did Walton. Indeed, the evidence indicates that Cook had trouble generating the initial stock list. Therefore, Cook's performance deficiencies did not cause potential double billing, as did Walton's. Given that Walton's replacement was a female, Walton has produced no appropriate comparator and she

8

has no evidence of pretext, her sex discrimination claim must fail.

## IV. DISABILITY CLAIM

To establish a prima facie case for disability discrimination, under the Americans With Disabilities Act ("ADA"), Walton must show that: (1) she has a disability;[2] (2) she is a qualified individual; and (3) she was subjected to unlawful discrimination because of her disability. *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1526 (11th Cir. 1997)(citations omitted). A qualified individual with a disability is one who can perform the essential functions of her job "despite [her] disability or with a reasonable accommodation for [her] disability." *Ellis v. Morehouse School of Medicine*, 925 F. Supp. 1529, 1540 (N.D. Ga. 1996). The Equal Employment Opportunity Commission's Interpretative Guidelines indicate that the employer should give primary consideration to the employee's preferred accommodation. 29 C.F.R. Pt. 1630 App., at 64. "However, the <u>employer providing the accommodation has the ultimate discretion to choose between **effective** accommodations</u>, and may choose the less

---

[2] The ADA defines a disability as: "a) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; B) a record of such impairment; or C) being regarded as having such an impairment." 42 U.S.C. § 12101(2). Brookwood contends that Walton is not disabled within the meaning of the ADA because her scoliosis does not substantially limit one or more major life activities. However, he court assumes that Walton is disabled for purposes of this motion for summary judgment.

9

expensive accommodation or the accommodation that is easier for it to provide." *Id.* (emphasis supplied). *Accord*, *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 - 86 (11th Cir. 1997). Job restructuring and job transfers are examples of reasonable accommodations. 42 U.S.C. § 12111(9)(B).

### A. Failure To Accommodate Claim

Walton argues that a genuine issue of material fact exists regarding whether Brookwood provided her with a reasonable accommodation. She contends that Brookwood's failure to follow the work restrictions imposed by her orthopedic physician is evidence that it failed to reasonably accommodate her scoliosis.

Despite the assertions made in her brief, Walton's own testimony establishes that Brookwood effectively, and therefore reasonably, accommodated her scoliosis. Walton testified that Brookwood accommodated her by: 1) allowing her to use a cart one-half the weight of the cart she had previously used, and 2) allowing her to place fewer linens on the lighter cart. Walton Dep., at 56, 58. She also testified that as a result of these changes, her "scoliosis didn't act up." Walton Dep., at 58 - 59. Therefore, Brookwood's accommodations were effective.[3]

---

[3] Walton's affidavit testimony, that her back pain "worsened" after Brookwood gave her the smaller cart, directly contradicts her deposition testimony. Because of this conflict, as well as other conflicts found in

10

Despite the effectiveness of the accommodations, Walton argues that Brookwood should have transferred her to a different position. According to Walton, her physician restricted her to pushing a cart weighing no more than fifty pounds and her physician requested that Brookwood transfer her to another position. Pl.'s Br. at 8 - 9.

This argument is unpersuasive. The court notes that Walton's orthopedic physician, Dr. Rex Harris, never notified Brookwood that Walton was restricted to pushing a fifty pound cart. Instead, he wrote a letter which said, "no pushing heavy carts." Pl.'s Ex. 3, at 16. It was only during his deposition after he was asked what would constitute a heavy cart that he specified a weight limit of fifty pounds. *Id.* at 12. Dr. Harris further testified that he requested the job transfer because "what she really wanted was to be reassigned to another job." *Id.* at 13. On Walton's transfer request form, however, she never indicated that she wanted to transfer because of her scoliosis. Walton Dep., at 101 - 2. Instead she indicated that she sought the transfer for "more training." Walton Dep., at 101. When asked about the transfer

---

Walton's affidavit, the court will grant Brookwood's motion to strike her affidavit. *See Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984)("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.")

11

request during her deposition, Walton responded that "you can't never get enough training." Walton Dep., at 101 - 2. These facts, along with the effectiveness of the accommodation Brookwood provided, preclude a finding that Brookwood failed to meet its obligations under the ADA. "Stated plainly, under the ADA a[n]...individual with a disability is 'not entitled to the accommodation of her choice, but only to a reasonable accommodation.'" *Stewart*, 11 F.3d at 1286 (citation omitted)(alterations and exclusions in original).

### B. Termination Claim

Finally Walton attempts to salvage her ADA claim by pointing to evidence she contends shows that Brookwood's proffered legitimate non-discriminatory reason for terminating her was pretextual. First Walton notes that Brookwood relies on an inventory restock list that it produced three days after her termination to support its claims that she failed to follow Omnicell procedures. Pl.'s Ex. 8. However, this list is not the primary evidence upon which Brookwood relies. On March 10, the day <u>before</u> Walton's termination, her supervisor discovered duplicate restock lists apparently prepared by Walton. Defs.' Ex. 4 (Doc. 29), at ¶6. Because duplicate lists cause incorrect inventory records and double billing by the supply vendors, Brookwood had previously warned Walton that it would terminate her if she

continued to make such errors. The March 10 duplicate lists indicate that Walton had again made inventory/re-stocking errors. Any additional documents, that Brookwood may have gathered after Walton's termination, do not subtract from the documents discovered prior to her March 11 termination.

Next, Walton attempts to point out inconsistencies in Brookwood's evidence from which, she asserts, a jury could find pretext. Darryle Melton was Brookwood's Omnicell system administrator. Pl.'s Ex. 5, at 10. Although he was not involved in writing the Omnicell computer program, he was trained by the creators of the system and understood all the security features of the system. *Id.* at 13 - 14. Melton testified that no one had a master list of passwords and therefore no one could access the Omnicell computer system using another person's password. *Id.* at 23 - 24. However, another employee, Odell Traylor ("Traylor"), testified that he was able to obtain the passwords of other employees. Pl.'s Ex. 10, at 23 - 24. Traylor replaced Judy Gaudet, the supervisor who discovered the duplicate restock lists and subsequently terminated Walton. *Id.* at 16. In light of such evidence, Walton questions whether the duplicate restock lists, upon which Gaudet relied to support her termination decision, were actually generated by Walton. Walton claims not to have created duplicate lists.

Such evidence is not enough to show pretext and support a finding of discriminatory termination. First, Walton never cites to her deposition, or any evidentiary materials, to support her claim that she did not generate the duplicate lists. *See* Pl.'s Br. at 15. However, even assuming the truthfulness of Walton's statement, she still cannot show pretext. Although Traylor replaced Gaudet and therefore Gaudet probably had access to the passwords, the evidence fails to establish such. Indeed, Traylor testified that he had no idea whether Gaudet had access to such information. Pl.'s Ex. 10, at 25 - 26. Even if Gaudet did have access to the passwords, Walton has produced no evidence which would suggest that Gaudet fraudulently generated the duplicate lists in an effort to discriminatorily terminate Walton. *See Avril v. Village South Inc.*, 934 F. Supp. 412, 417 (S.D. Fla. 1996) (holding that where an employer proffers poor performance as its legitimate non-discriminatory reason for termination, the plaintiff must produce evidence that the employer evaluated the plaintiff in bad faith). *See Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997). In order to create evidence from which a jury might find pretext, Walton must produce more than her own conclusory allegations. *Grigsby v. Reynolds Metal Co.*, 821 F.2d 590, 597 (11th Cir. 1987) ("[c]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination...."). Because Walton has failed to

14

produce pertinent evidence beyond her conclusory allegations, defendants are entitled to summary judgment on Walton's disability claim.[4]

## V. RETALIATION CLAIM

"To establish a prima facie case of retaliation, a plaintiff must show: (1) statutorily protected expression; (2) adverse employment action; and (3) a causal link between the protected expression and the adverse action." *Stewart*, 117 F.3d at 1287 (citations omitted). While Walton fails to specifically address the disability retaliation claim in her brief, the court assumes, for the purpose of summary judgment, that Walton can make out a prima facie case for retaliation based upon disability. However, Walton again fails to produce any evidence that Brookwood's proffered legitimate non-discriminatory reason for the termination was pretextual. Again she relies upon her own conclusory allegations. Therefore, summary judgment for Brookwood is appropriate on her retaliation claim.[5]

---

[4] Not only has Walton failed to produce evidence of pretext, when asked why she believed Brookwood terminated her, she repeatedly replied, "I really don't know." Walton Dep., at 99 - 100, 126 - 27.

[5] The court notes that Walton failed to address the retaliation claim in the context of her race and sex claims. Accordingly, inasmuch as she asserts retaliation claim based upon racial or gender animus, said claims are abandoned. *Resolution Trust*, 43 F.3d at 599.

15

## VI. CONCLUSION

Because there are no genuine issues of material fact surrounding any of Walton's claims, summary judgment for the defendants is appropriate.

DONE this 25th day of March, 1998.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE